IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| STEWART M. STANLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:13-cv-05137-MDH |
| | ) |
| THE LAFAYETTE LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 54). After full and careful consideration of the issues presented and arguments provided by the parties, the Court hereby **DENIES** Defendant's motion.[1]

## I. BACKGROUND

Plaintiff filed this action in state court alleging Defendant breached the parties' insurance agreement and vexatiously refused to pay benefits without reasonable cause or excuse. The petition alleges that Defendant agreed to provide lifetime benefits to Plaintiff under the Policy if

---

[1] The parties also filed motions to strike certain briefing related to the motion for summary judgment (Docs. 67, 70). Defendant filed a motion to strike Plaintiff's responses to Defendant's undisputed material facts, arguing that Plaintiff's responses improperly included objections unrelated to form, argued facts and the law, and violated the local rule that suggestions in opposition to summary judgment shall contain a "concise listing of material facts as to which the party contends a genuine issue exists." *See* L.R. 56.1. Plaintiff counters that "his responses were specific, concise, and relevant given the context of having to respond to Defendant's 137 paragraphs and that his objections are well-taken." While Defendant's motion presents a valid argument, the Court finds the actions of both parties are equally reprehensible. Both parties' undisputed material facts and responses thereto present an unnecessarily voluminous record filled with multiple facts per paragraph; immaterial, conclusory, and argumentative allegations; improper citations to the record; responses that argue the facts and law; and objections unrelated to form. Both parties failed to respect L.R. 56.1, which "exists to prevent a district court from engaging in the proverbial search for a needle in a haystack" and "reflect[s] the aphorism that it is the parties who know the case better than the judge." *Nw. Bank & Trust Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003); *see also Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judge are not like pigs, hunting for truffles buried in briefs.")). Based on the foregoing, the Court hereby **DENIES** Defendant's motion to strike (Doc. 67). Plaintiff also filed a motion to strike, seeking to strike Defendant's reply suggestions for violating the page limit stated in L.R. 7.0(f). Because Defendant filed an amended brief in compliance with L.R. 7.0(f), Plaintiff's motion to strike (Doc.70) is hereby **DENIED AS MOOT**.

Plaintiff suffered a total disability commencing before age 50, that Plaintiff was involved in an automobile accident at age 48 wherein he suffered a traumatic brain injury that caused total disability and entitled Plaintiff to lifetime benefits under the Policy, and that Defendant acknowledged and paid benefits for Plaintiff's total disability but wrongfully ceased paying benefits when Plaintiff reached age 65. Defendant removed the case to federal court and filed an answer alleging that Plaintiff did not become totally disabled under the Policy until after age 50 such that he was entitled to benefits only to age 65 rather than life; that Plaintiff's claims are barred by the statute of limitations and/or estoppel; and that Plaintiff failed to provide timely proof of loss to Defendant, which prejudiced Defendant's investigation of Plaintiff's claim.

Defendant now moves for summary judgment arguing there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law based on the statute of limitations and Plaintiff's failure to plead/provide timely proof of loss. Defendant argues: (1) the statute of limitations began accruing in 1999 such that Plaintiff's claims are now barred by Missouri's 10-year statute of limitations; (2) Plaintiff failed to adequately plead proof of loss under Rule 9(c); and (3) Plaintiff failed to provide proof of loss for the time period prior to July 1998 or, if he did, Plaintiff failed to provide timely proof of loss and Defendant was thereby prejudiced in its ability to investigate Plaintiff's claims. Plaintiff responds that Defendant's motion for summary should be denied because there are genuine issues of material fact and Defendant is not entitled to judgment as a matter of law. After full briefing, the matter is now ripe for review.

## II. STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled

2

to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets the initial step, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate."  *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011).

## III.  DISCUSSION

The Court finds there are genuine issues of material fact that preclude summary judgment in this case.  Defendant's arguments for summary judgment are analyzed separately below.

### A.  Undisputed Material Facts

Plaintiff was born on April 9, 1948.  On February 1, 1982, Defendant issued a Total Disability Policy ("Policy") to Plaintiff.  The Policy defines "total disability" as follows:

> *Total Disability Defined*.  You will be considered *totally disabled* if all these conditions are met:
> - You are unable to do the substantial and material duties of your regular occupation.  Your *regular occupation* is your usual work when total disability starts.  If you are retired and not working when total disability starts, your regular occupation will be the normal activities of a retired person of like age and sex
> - Your total disability starts while the policy is in force.
> - Your total disability results from sickness or injury.
> - You are under a doctor's care.  *Doctor* means a licensed physician other than yourself.
>
> However, after 60 months of continuous total disability from the First Benefit Day, you must also meet this condition:
> - You are unable to do the substantial and material duties of each and every reasonable occupation.  A *reasonable occupation* is any gainful work you can do based on your education, training or experience, and with due regard to your earnings before disability starts.

3

Section 3 of the Policy states:

> *Total Disability Benefit*. We'll pay you a benefit for each total disability that continues through the First Benefit Day shown in the policy schedule. Starting with that day, we'll pay the benefit for as long as your total disability continues. But we won't pay benefits for a period longer that the Maximum Benefit Period that applies. . . . For each month of total disability, we'll pay you the Monthly Benefit for Total Disability. The amount of this benefit is shown in the policy schedule.

Plaintiff's policy schedule defines "First Benefit Day" as the "181st day of total disability"; Plaintiff's "Monthly Benefit for Total Disability" as "$800 per month to the end of the Maximum Benefit Period"; and Plaintiff's "Maximum Benefit Period" for both sickness and injury as "your lifetime if total disability commences before your 50th birthday, otherwise until your 65th birthday but not less than 24 months[.]"

Section 6 of the Policy describes the process for claiming benefits. The introduction paragraph states "[f]or you to receive benefits, we must receive: written notice of your claim to benefits; and proof of your loss." The insured's written notice of claim must be given to the insurer "within 20 days after any covered loss starts or as soon as reasonably possible." Once the insurer receives a notice of claim, the Policy states the insurer will send claim forms to the insured that "ask for facts that prove [the insured's] loss." Proof of loss "must describe how the loss occurred, its nature and its extent" and must be given to the insurer "within 90 days after: each total or partial disability period for which [the insurer is] liable; or the occurrence of any other loss for which [the insured] is covered." If the insured fails to provide proof of loss within 90 days, the insurer will not reduce or deny the insured's claim but the insured must provide proof of loss "as soon as it is reasonable possible to do so" and "within one year after the time limit unless [the insured is] legally unable to do so."

4

Plaintiff was involved in an automobile accident in May of 1996, at the age of 48. Plaintiff continued to work or continued to try to work at his business, where he was self-employed, until July of 1998, when Plaintiff stopped working completely due to cognitive impairments. In August of 1998, at the age of 50, Plaintiff filed a notice of disability claim with Defendant. Plaintiff's notice stated that his disability resulted from cognitive injuries sustained in an accident that occurred on May 17, 1996, that Plaintiff was hospitalized at the Mayo Clinic in May 1996 and attended visits at the Mayo Clinic the "last 2 ½ years[,]" and that Plaintiff stopped working completely on July 22, 1998. Plaintiff submitted a Disability Claimant's Statement form in October of 1998, wherein Plaintiff stated his disability resulted from an accident on May 17, 1996. In response to questions regarding dates/times he was able to perform work only in a limited capacity and dates/times he was unable to perform any work or business, Plaintiff did not respond with specific dates or time but stated "[d]uring period from 5/17/96 – 7/22/98 was unable to work during several periods from 1 day to approx. 6 wks in Jan/Feb 97." Plaintiff reported that he was hospitalized and treated by "Dr. Boeve et al." at the Mayo Clinic since May 1996 for his condition and that he had other insurance for disability/health benefits through Provident Life. Plaintiff further provided information about his former occupation and, in response to a question asking how Plaintiff's condition interfered with his performance of his occupation, Plaintiff stated "no concentration or memory – need to have no sound lights several times in day – fall asleep w/o warning."

Plaintiff's employer and physician completed forms on behalf of Plaintiff. Elizabeth Parr completed an "Employer or Administrator's Statement" that reported Plaintiff worked 0-12 hours in a normal week, Plaintiff stopped working completely on July 22, 1998, and the job duties associated with Plaintiff's occupation – owner/general manager – require 50-70 hours

5

spent per week. Dr. Boeve completed an "Attending Physician's Statement" that stated Plaintiff has a primary diagnosis of "cognitive impairment from traumatic brain injury" and reported that Plaintiff's symptoms first appeared/accident happened on May 17, 1996, that Dr. Boeve first treated Plaintiff for his condition on August 6, 1997, and Plaintiff ceased work because of his sickness/injury on July 22, 1998. Dr. Boeve did not answer the question that asked when Plaintiff "limited work because of sickness or injury[.]" The Mayo Clinic submitted a Disability Form in connection with Dr. Boeve's Attending Physician Statement that stated: "On December 1, 1998, Dr. B. F. Boeve stated Mr. Stanley should be considered totally disabled since July 22, 1998, indefinitely." In addition to the above information, Plaintiff's wife sent a letter to Defendants on November 11, 1998 that included the names and addresses of Plaintiff's two local doctors – Dr. Whetstone and Dr. Orlando – and further suggested that records from Provident Life "may be available/helpful to you." Plaintiff's wife sent another letter to Defendant on March 15, 1999 that stated "[a]s a review of the subject file will show, my husband (ref file) has had significant health problems from an auto accident for almost three years" and requested a response from Defendant regarding the status of Plaintiff's disability claim.

On or about March 24, 1999, Defendant made its first benefit payment to Plaintiff for $1,600. Plaintiff knew at that time that Defendant did not pay him benefits back to May 1996. Defendant continued to make monthly payments to Plaintiff and continued to monitor Plaintiff's health. On January 19, 2007, Defendant's employees Margo Jenkins and Dr. David Vore paid a home visit to Plaintiff in order to get an update on Plaintiff's disability status. During that meeting, Walter Williams – a close personal friend of Plaintiff who signed a personal representative form prior to the meeting – raised a question as to the cease date of Plaintiff's disability benefits. Ms. Jenkins explained that Plaintiff's benefits were payable to age 65 based

6

Case 3:13-cv-05137-MDH   Document 74   Filed 09/14/15   Page 6 of 17

on an assessed incurred date of July 29, 1998, which occurred after Plaintiff's 50th birthday. Mrs. Stanley and Mr. Williams questioned why the incurred date was in 1998 when Plaintiff's accident occurred in 1996, they attested that Plaintiff lost the ability to perform his occupational duties after his accident in 1996, and they requested a letter of explanation regarding how the incurred date was determined. Defendant sent three letters to Plaintiff on March, 29, 2007, April 16, 2007, and September 11, 2008 that explained how Defendant determined Plaintiff's incurred date and stated Defendant was willing to consider additional information/documentation to support Plaintiff's assertion that Defendant's disability began prior to July 29, 1998. Neither Plaintiff nor anyone on his behalf responded to Defendant's letters.

On February 21, 2013, Defendant sent a letter to Plaintiff that stated the incurred date on Plaintiff's claim was July 29, 1998, explained that the incurred date was three months after Defendant's 50th birthday and therefore his benefits were payable only until age 65, and notified Plaintiff of final payment. The letter further stated: "If you can provide us with any additional information that would furnish a basis for our further review and reconsideration of any information communicated thus far, please forward it to our attention within the next 30 days and we will review this matter further." Plaintiff did not send any further information or cash Defendant's final payment. On June 12, 2013, Plaintiff's attorney sent a letter to Defendant that argued the incurred date assessed by Defendant was erroneous in light of the documentation previously provided and requested that Defendant "review your determination and re-instate Mr. Stanley's benefits immediately." Plaintiff's attorney attached a letter from Dr. Orlando dated May 17, 2013, which described Plaintiff's course of treatment and stated "I believe with certainty that [Plaintiff] was completely disabled since the first day I met him in January 1997." Defendant initiated an internal appeals process and, on or about July 23, 2013, a three-person

7

appeals panel upheld the initial decision regarding Plaintiff's incurred date and duration of payments. Plaintiff commenced this suit on September 16, 2013.

## B. Defendant's Arguments for Judgment as a Matter of Law

### 1. Statute of Limitations

There is a genuine dispute for trial concerning when the statute of limitations began accruing on Plaintiff's claims such that the Court cannot say as a matter of law that Plaintiff's claims are barred by the statute of limitations.

The statute of limitations is an affirmative defense that must be pleaded and proved by the defendant. *See Mahanna v. U.S. Bank Nat. Ass'n*, 747 F.3d 998, 1002 (8th Cir. 2014).[2] Under Missouri law, "[a]n action upon any writing . . . for the payment of money or property" is subject to a ten year statute of limitations. Mo. Rev. Stat. § 516.110(1); *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) ("A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations."). Because insurance policies constitute written contracts for the payment of money, Missouri courts have held that actions on insurance policies must be commenced within ten years after the cause of action has accrued. *See Hughes Development Co. v. Omega Realty Co.*, 951 S.W.2d 615 (Mo. 1997), *cited with approval in Community Title Co. v. Stewart Title Guar. Co.*, 977 S.W.2d 501 (Mo. 1998).[3] A cause of action is deemed to accrue "not . . . when . . . the technical breach of

---

[2] Plaintiff argues Defendant cannot take advantage of the statute of limitations defense because Defendant failed to properly plead the affirmative defense under Missouri law. While it is true that Missouri procedural law requires a defendant to plead the particular provision relied upon in asserting a statute of limitations defense, *see Bateman v. Platte Cnty.*, 363 S.W.3d 39, 42 (Mo. 2012), a federal court sitting in diversity need not apply state procedural rules. *See Roberts v. Francis*, 128 F.3d 647, 650 (8th Cir. 1997). Under the Federal Rules of Civil Procedure, Defendant's general statement that Plaintiff's claims are barred by the applicable statute of limitations is sufficient to provide notice and preserve the defense. *See, e.g., Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 565 (E.D. Mo. 1996).

[3] *But see Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 775 n. 2 (Mo. 2015). *Spalding* states:

> It is true that some claims made against insurance policies are written contracts for the payment of money and, therefore, the 10–year statute of limitations applies. . . . The particular terms of each contract (policy

contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment[.]" Mo. Rev. Stat. § 516.100.

For purposes of determining when a statute of limitations begins accruing, damages are considered "capable of ascertainment" when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Behan v. Firemen's Ret. Sys. of St. Louis*, 452 S.W.3d 218, 223-24 (Mo. Ct. App. 2014) (quoting *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006)). The test is an objective one and asks "not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel*, 197 S.W.3d at 584-85. The phrase "capable of ascertainment" refers to the fact of damage rather than the extent of damages and, therefore, "all possible damages do not have to be known, or even knowable, before the statute accrues." *Id.* at 584 (quoting *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. 1997)); *Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999). Because the "capable of ascertainment" standard is an objective one, the determination of when a statute of limitations begins accruing can be decided by the court as a matter of law; however, "when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." *Powel*, 197 S.W.3d at 585.

---

of insurance in this context) must be examined in accord with this Court's analysis set out in *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 182–83 (Mo banc 2014), to determine which statute of limitations applies.

*Id.* *Rolwing* discusses the application of Section 516.110(1) (ten year statute of limitations) vis-a-vis Section 516.120(1) (five year statute of limitations) for contract actions. *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 183 (Mo. 2014). Here, the parties agree that the ten year statute of limitations contained in Section 516.110(1) applies and, therefore, the Court will assume the ten year statute of limitations applies for purposes of this motion.

9

Here, Defendant argues Plaintiff's breach of contract claim began accruing in March of 1999 because that is when the technical breach occurred and that is when Plaintiff's damages were sustained and capable of ascertainment. Defendant argues the alleged breach in this case occurred in March of 1999 because that is when Defendant determined the incurred date for Plaintiff's Total Disability, which defines Plaintiff's maximum benefits period under the Policy. Defendant argues Plaintiff should have been on notice of the alleged breach and damages because Plaintiff received his first benefits check in March 1999 in the sum of $1,600, which Plaintiff knew or should have known represented benefits for the period of January 1999 to March 1999,[4] which Plaintiff knew or should have known meant his 180-day elimination period ran from July 1998 to January 1999, which Plaintiff knew or should have known meant that Defendant determined the incurred date of Plaintiff's Total Disability to be July 1999.[5] Furthermore, Defendant argues that because Plaintiff turned 50 years old in April of 1998, Plaintiff knew or should have known that Defendant determined that Plaintiff's Total Disability commenced after Plaintiff's 50th birthday and, therefore, that Plaintiff was entitled to benefits only to age 65.

Plaintiff argues, conversely, that there is a factual dispute regarding when Plaintiff's damages were sustained and capable of ascertainment. Plaintiff argues, first, that there is a dispute regarding when Defendant actually decided the incurred date for Plaintiff's disability based on alleged inconsistencies and markings in the internal claims file. Plaintiff next argues there is a factual dispute regarding when Plaintiff's damages were capable of ascertainment; he

---

[4] Plaintiff's policy schedule states Plaintiff's monthly benefit for Total Disability is $800/month.

[5] Plaintiff's policy states "[w]e'll pay you a benefit for each total disability that continues through the First Benefit Day shown in the policy schedule" and Plaintiff's policy schedule lists Plaintiff's First Benefit Day as the 181st day of Total Disability.

suggests a reasonable person would not have known Defendant breached the contract until 2013, when Defendant ceased making payments, or, at the earliest, until 2007, when Defendant sent a letter explaining benefits would cease at age 65. Finally, Plaintiff argues damages were not sustained until 2013 because "lifetime benefits were not due and owing in 1999" and "it was not certain Plaintiff would be alive in 2013" such that "Plaintiff did not have a right to institute suit in 1999 for disability benefits in 2013 that might become moot beforehand."

The Court finds "contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run" and, therefore, "it is a question of fact for the [fact-finder] to decide." *Powel*, 197 S.W.3d at 585. Specifically, there is an issue for trial concerning when a reasonable person in Plaintiff's shoes "would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." Although Defendant argues Plaintiff should have known there was a substantial breach and damages in 1999, Defendant presented no clear evidence to show that Plaintiff received any type of explanatory claims decision in 1999, including information regarding the relevant incurred date, the applicable First Benefits Day, and Plaintiff's Maximum Benefits Period.[6] Whether a reasonable person would have adduced that information from a first benefits check in the amount of $1,600 is a question of fact. On the other hand, the Court rejects Plaintiff's argument that damages were not sustained and capable of ascertainment until 2013 because that is when Defendant actually ceased making payments. Plaintiff admitted he knew in 1999 that he did not receive benefits back to 1996 and he knew as at least as early as 2007 that he was not considered totally disabled for any period prior to July 1998, that he was not compensated benefits for any time period prior to January 1999, and that his benefits would

---

[6] While Defendant states such information is typically provided to an insured along with a first benefits payment, Defendant could not produce such a notice in this case and Plaintiff stated he never received one.

11

cease after his 65th birthday. Therefore, at least as early as 2007, "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel*, 197 S.W.3d at 584-85. Although the full extent of damages may not have been realized at that time, "all possible damages do not have to be known, or even knowable, before the statute accrues." *Id.* at 584.[7]

In sum, there is a triable issue of fact concerning whether the statute of limitations in this case commenced in 1999 or 2007. If the limitations period commenced in 1999, Plaintiff's claims are barred. If the limitations period commenced in 2007, Plaintiff's claims are not barred. A fact-finder is necessary to determine when the damage resulting from Defendant's breach was sustained and capable of ascertainment.

### C. Pleading Proof of Loss

Plaintiff's petition sufficiently pleads that Plaintiff provided proof of loss to Defendant. Under Missouri law, proof of loss is considered a condition precedent and the insured's failure to plead satisfaction of that condition precedent renders the petition defective. *See Harding v. State Farm Mut. Auto. Ins. Co.*, 448 S.W.2d 5, 7 (Mo. 1969) (citing *Propst v. Capital Mut. Ass'n,* 233 Mo. App. 612, 124 S.W.2d 515, 520 (1939)). Under Federal Rule of Civil Procedure 9(c),

---

[7] Plaintiff also brings a continuing damage argument under Section 516.100(1), which the Court hereby rejects. *See* Mo. Rev. Stat. § 516.100 (a cause of action is deemed to accrue when the damage resulting from a breach "is sustained and is capable of ascertainment, *and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained*." (emphasis added)). Plaintiff cites no Missouri case law applying the continuing damage rule in the context of a disability insurance policy. Plaintiff relies mainly on the cases of *Sabine v. Leonard*, 322 S.W.2d 831, 837-38 (Mo. 1959), which involved a debtor's unpaid installments under a promissory note, and *Reed v. Rope*, 817 S.W.2d 503, 508 (Mo. Ct. App. 1991), which involved an ex-husband's breaches of an antenuptial agreement. Federal appellate courts, in rejecting the continuing damage argument in the insurance disability context, have found such cases distinguishable, reasoning that there is a difference between a disagreement as to whether an obligation exists under a contract and disagreement as to continuous and ongoing obligations under a contract. *See, e.g., Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 881 (4th Cir. 2015); *Lang v. Continental Assurance Co.*, 54 F. App'x 72, 75 (3d Cir. 2002); *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1105 (10th Cir. 1999); *Dinerstein v. Paul Revere Life Ins. Co.*, 173 F.3d 826, 828-29 (11th Cir. 1999). *But see Schaefer v. AXA Equitable Life Ins. Co.*, 345 F. App'x 87, 97 (6th Cir. 2009). Moreover, the Eighth Circuit recently suggested that application of the continuing damage rule in the disability insurance context would be inappropriate. *See Brown v. CRST Malone, Inc.*, 739 F.3d 384, 388 (8th Cir. 2014) (noting that such an argument "contravenes one of the purposes of creating a statute of limitations in the first place: to encourage timely suits").

however, the standard for pleading satisfaction of a condition precedent is not burdensome; "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c); *see, e.g., Jenkins v. Pfizer, Inc.*, No. 06-0688-CV-W-REL, 2006 WL 2987673, at *1 (W.D. Mo. Oct. 17, 2006) (holding allegation that "[a]ll conditions precedent to filing this action have been met" is sufficient to satisfy Rule 9(c) in this district). On the other hand, "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." *Id.*

Here, the Court finds Plaintiff's petition sufficiently alleges that Plaintiff provided proof of loss to Defendant.[8] Although the petition does not contain the typical language used in insurance litigation, i.e. that "the insured has met all conditions precedent," a review of the petition reveals general allegations that claim Plaintiff complied with all conditions precedent under the insurance contract. For example, Paragraphs 8 and 14 of the petition allege Plaintiff is "entitled to benefits under the Policy for the remainder of his lifetime" and Paragraph 9 alleges "Defendant acknowledged that Plaintiff was Totally Disabled from the injuries sustained in the automobile accident and began paying disability benefits" and Paragraph 10 states "Plaintiff received said disability payments under the Policy until his 65th birthday." These allegations, taken together, generally allege that Plaintiff satisfied his obligation to present proof of loss and that Defendant approved Plaintiff's claim and began paying benefits under the policy. *See, e.g., Consumers Ins. USA, Inc. v. James River Ins. Co.*, No. 12-03303-CV-S-JTM, 2012 WL 5196875, at *3 (W.D. Mo. Oct. 19, 2012) (holding Rule 9(c) satisfied where Plaintiff alleged the

---

[8] The Court notes that Defendant raised this alleged pleading error for the first time in its Motion for Summary Judgment. Defendant did not cite failure to state a claim as an affirmative defense, nor did Defendant move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) and Rule 9(c). At the current stage of litigation, a motion for judgment on the pleadings under Rule 12(c) would remain an available avenue to challenge the sufficiency of Plaintiff's pleadings. *See, e.g., Advantage Eng'g, Inc. v. Burks Pumps, Inc.*, 28 F.3d 1216 (7th Cir. 1994) ("Burks's argument is based solely on the pleadings and thus constitutes an argument for judgment on the pleadings under Fed.R.Civ.P. 12(c), and not summary judgment under Rule 56.").

13

claims asserted fell within the terms of the insuring agreements, that the policies obligated the defendants to indemnify, and that the defendants wrongfully denied coverage). Further, in Defendant's answer, Defendant states "[t]he proof of loss provided by Plaintiff within the required time period established that Plaintiff did not become totally disabled within the meaning of the Policy until after age 50." (emphasis added). *See generally Resolute Ins. Co. v. Percy Jones, Inc.*, 198 F.2d 309, 311 (10th Cir. 1952) ("So also the failure to allege compliance with conditions precedent may be cured by the allegations of the answer. . .").

Based on the foregoing, the Court finds Plaintiff sufficiently alleged that he provided proof of loss.[9] To the extent Defendant attacks the adequacy of the proof of loss provided by Plaintiff or the reasonable conclusions one may derive therefrom, those issues relate to Plaintiff's actual compliance with the condition precedent rather than Plaintiff's pleading of the condition precedent, and those arguments are further discussed below.

### D. Adequacy of Proof of Loss

There is a genuine issue of material fact concerning whether Plaintiff provided timely proof of loss to Defendant to show his alleged Total Disability began prior to July 1998; therefore, summary judgment is inappropriate.

The failure of an insured to comply with a condition precedent is an affirmative defense that the insurer must specifically plead and prove. *See Nichols v. Preferred Risk Grp.*, 44

---

[9] The Court notes that, even assuming Plaintiff failed to adequately plead satisfaction of the condition precedent, that the appropriate remedy would be for the Court to grant Plaintiff leave to amend his petition pursuant to Rule 15(a)(2) rather than to grant Defendant judgment on this basis. *See, e.g., Acuity v. Mid-Am. Piping, Inc.*, No. 4:07CV829 HEA, 2007 WL 2684246, at *2 (E.D. Mo. Sept. 7, 2007); *Arnold v. Am. Family Mut. Ins. Co.*, 987 S.W.2d 537, 542 (Mo. Ct. App. 1999); *Maguire v. Fed. Crop Ins. Corp.*, 181 F.2d 320, 322 (5th Cir. 1950) ("No motion to dismiss the complaint because of plaintiff's failure to allege conditions precedent to her right of recovery was made in the lower court. If such motion had been made and sustained, the defect was subject to amendment, which should now be made in advance of another trial."); *see generally* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1303 (3d ed.) ("A failure to allege the performance or occurrence of conditions precedent can be challenged by a motion to dismiss but normally should be curable by amendment under Rule 15. The availability of an amendment, of course, is subject to judicial discretion and to the terms of the jurisprudence developed under that rule, which are discussed elsewhere.").

S.W.3d 886, 896-97 (Mo. Ct. App. 2001). The insurer must show both that the insured failed to comply with a condition precedent and that the insurer was somehow prejudiced by the insured's non-compliance. *See Pannell v. Missouri Ins. Guar. Ass'n*, 595 S.W.2d 339, 348 (Mo. Ct. App. 1980). As summarized by the Supreme Court of Missouri:

> In short, Missouri treats the failure of an insured to provide timely notice to the insurer as an affirmative defense. The nature and elements of this affirmative defense is most clearly set out in Missouri Approved Instruction 32.24, which provides:
>
>> 32.24 [1978 New] AFFIRMATIVE DEFENSE—INSURANCE POLICY
>>
>> Your verdict must be for defendant if you believe:
>>
>>> First, plaintiff (describe violated policy condition, e.g. 'failed to submit a proof of loss to defendant in the time prescribed by the policy'), and
>>>
>>> Second, defendant was thereby prejudiced.
>
> As indicated by the instruction, both issues are matters of fact with the burden of proof upon the insurer.

*Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. 1997). "It is typically a question for a fact-finder whether an insured provided notice to the insurer within a reasonable time and whether the insurer suffered substantial prejudice as a result." *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 272 (Mo. 2013). However, "where all reasonable persons would conclude that notice or proof was not given or made within that time, under all of the circumstances, then it becomes a question of law for the court." *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 14 (Mo. 1995).

In the present case, the Policy requires both written notice of claim and proof of loss prior to recovery. Defendant's answer specifically alleges that: "The proof of loss provided by Plaintiff within the required time period established that Plaintiff did not become totally disabled within the meaning of the Policy until after age 50. Plaintiff's current attempt to establish total disability prior to age 50 is untimely and has prejudiced Lafayette in its ability to investigate the

15

facts." To the extent that Defendant argues the evidence provided by Plaintiff in 1998-1999, prior to the issuance of the first benefit payment, was insufficient to establish that Plaintiff's Total Disability commenced prior to July 1998, the Court finds there is a genuine issue of material fact for trial.

The Policy requires proof of loss sufficient to "describe how the loss occurred, its nature and its extent." Whether Plaintiff's proof was sufficient to show total disability commencing prior to July 1998 is a question of fact for the fact-finder. On one hand, Plaintiff and his doctor neglected to complete portions of Defendant's claims forms that requested information concerning when Plaintiff limited work due to injury/illness. On the other hand, Plaintiff consistently alleged his disability resulted from an accident in 1996 and there is evidence in the file to suggest that Plaintiff suffered cognitive impairments that limited his ability to work prior to July 1998. There are factual disputes regarding what information was provided to Defendant, what information was required to be provided to Defendant under the Policy, whether Defendant investigated all the information provided by Plaintiff, whether Defendant had any duty to supplement the information provided by Plaintiff or to advise of deficiencies in the forms, etc. Defendant cannot merely rely on the onset date of disability as determined by the other agencies and/or the date Plaintiff stopped working completely because those determinations are not necessarily in compliance with "total disability" as defined under the Policy; however, Plaintiff cannot merely rely on his citation to an accident that caused his disability in 1996 and argue Defendant failed to advise of deficiencies in proof of loss when Plaintiff may have given no indication that Plaintiff's ability to sustain work from the period of 1996-1998 was impaired.

In sum, Defendant's affirmative defense related to proof of loss, in substance, does not allege that Plaintiff's 1998 proof of loss was untimely or not provided; rather, it alleges Plaintiff

16

provided insufficient proof of loss to show disability commencing prior to July 1998. The Court reserves such a determination for trial. To the extent that the parties seek to use later-provided or later-acquired evidence to establish or repudiate the existence of Plaintiff's alleged total disability for the period prior to July 1998, such arguments are more appropriate for a motion in limine.

## IV. DECISION

Based on the foregoing discussion, Defendant's Motion for Summary Judgment (Doc. 54) is hereby **DENIED.** The parties shall submit a joint proposed scheduling order for the remainder of this case within ten (10) days of the date of this order.

**IT IS SO ORDERED.**

Dated:   September 14, 2015                           */s/ Douglas Harpool*
                                                     **DOUGLAS HARPOOL**
                                                     **UNITED STATES DISTRICT JUDGE**